WILSON KNOTT v. The RECEIVERS of the MORRIS CANAL AND BANKING COMPANY.

In the disposition of the trust property in their hands, receivers have a discretion, *for* the due exercise of which they are responsible to the court, and *in* the exercise of which they are subject to its control.

Receivers are not, like executive officers, bound to sell for the highest price, without regard to the purchaser, or to the disposition he may make of the property.

Where the receivers of the Morris Canal and Banking Company advertised that proposals would be received by them until a specified day for leasing the canal for one year, *held*,

That the advertisement did not bind the receivers to take the offer of the highest bidder, nor limit them to a certain time within which to receive bids.

ON the twenty-fourth of January, eighteen hundred and forty-four, the receivers of the Morris Canal and Banking Company reported to the court, that the existing lease of the canal being about to expire on the first day of April, then next, they had received various proposals for renting the same; that upon deliberation, they had decided to give the term to Mills and Sykes, the present lessees, subject, however, to the approval and confirmation of the court, and asking the direction of the court in the premises.

On the same day, Wilson Knott filed his petition to the chancellor, under oath, stating that the said receivers had caused

advertisements to be published in several newspapers of the state, notifying the public that written proposals would be received by them, at their office in Jersey City, until the eleventh day of January instant, for leasing the Morris Canal and the feeders, from the termination thereof at Newark, to the Delaware river, for the term of one year from the first day of April next. That the petitioner, on the said eleventh day of January, put in written proposals for the said lease, offering to pay therefor three thousand dollars, and to give the requisite security for the fulfillment of the contract.

That the only proposals for the said contract besides the petitioner's, were one from A. P., proposing to lease the said canal for two thousand and twenty dollars; one from D. K. A., proposing to lease the same for one thousand five hundred and twenty-five dollars, and one from Mills and Sykes, proposing to lease the same for one thousand five hundred dollars, for the year.

That after the biddings were opened, and after the day limited for receiving bids was past, the said Mills and Sykes were permitted to increase their bid, without an opportunity of further bidding being afforded to others. That the petitioner is ready to fulfil the contract on his part, agreeably to his bid, and to the said proposals; or if the bidding should be opened, he is prepared to offer a larger sum than has yet been bid for the said lease.

The prayer of the petition is, that the receivers be directed to execute to the petitioner a lease for the said canal, agreeably to the term of the said proposals and his bid, or that the biddings be re-opened, and that the receivers be directed to give public notice thereof; that in the meantime, the receivers may be restrained from executing any lease for the said canal, and that if they have executed any such lease, that it may be declared inoperative and void, and be ordered to be given up to be cancelled.

Upon filing the petition, an order was made that the receivers, and also the said Mills and Sykes, should show cause, on the

twenty-seventh day of January instant, why the prayer of the said petition should not be granted, and that the petitioner have leave to examine the receivers upon interrogatories, touching the matters set forth in the petition; that the parties have leave to take affidavits; and that Mills and Sykes, the proposed lessees of the canal, be at liberty to avail themselves of the same rule. An order was also made upon the receivers, to certify to the court all the facts and circumstances relating to the matters set forth in the said petition.

Pursuant to this order, the receivers filed their report, accompanied by a lease to the said Mills and Sykes, and pray a confirmation of the same. Interrogatories were exhibited to and answered by the receivers, and depositions of witnesses taken; from which it appears that the receivers, on the twenty-ninth of December, eighteen hundred and forty-three, resolved to advertise for proposals for leasing the canal and its appendages for one year from the first of April, eighteen hundred and forty-four; and that they advertised accordingly, that they would receive proposals at their office in Jersey City, until the eleventh of January, then next.

That proposals were delivered to one of the receivers from the petitioner, offering to lease the canal with its appendages for three thousand dollars; from Daniel K. Allen, for fifteen hundred and twenty-five dollars; and from Andrew Parsons, in the evening of the same day, at Paterson, for two thousand and twenty dollars; and that Mills and Sykes made proposals on the same day, to take a lease on certain contingencies at fifteen hundred dollars;—none of which propositions were accepted.

From a conversation of one of the receivers, it became known what proposals had been made, and on the twelfth of January Mills and Sykes further proposed to lease the property for three thousand dollars; and on the thirteenth of January made still another proposition.

That the receivers, believing Mills and Sykes the more suitable and competent lessees, and the rent offered by them being equal to that offered by any others, agreed with them upon

36*

the terms contained in the lease which they now desire to have confirmed.

The petitioner, by his counsel, now complains, that the receivers have acted improperly in disclosing the terms of the sealed proposals, and in entertaining propositions made after the eleventh of January, the time mentioned in the advertisement; and that they have shown partiality and favoritism in their determination.

S. G. Potts and Wall, for the petitioner.

E. Vanarsdale, for the receivers.

Vroom, for Mills and Sykes.

THE CHANCELLOR. In the disposition of the trust property, the receivers have a discretion, for the due exercise of which they are responsible to the court, and in the exercise of which they are subject to its control. The receivers being officers of the court, and entitled to its protection, will be sustained in their acts done in good faith, and without prejudice to the rights of those interested.

In leasing the canal and its appendages, great prudence and care were required on the part of the receivers. They are not like executive officers, bound to sell for the highest price, without regard to the purchaser, or the disposition he may make of the property; the object is not merely to obtain the greatest amount of rent, but also to secure the proper use and due repair of the canal and its locks, bridges, dams, &c. and the continuance and increase of business upon it, that as far as practicable the reversionary interest of the creditors and stockholders, may be promoted.

It was proper, therefore, by advertising for proposals, to procure as many bidders as they could, that from them they might select such as would not only pay the best rent, but take also the best care of the canal, and otherwise promote, and if possible, increase the value of the trust property.

The advertisement for proposals was not such contract as would bind the receivers to take the offer of the highest bidder, nor limit them to a certain time within which to receive bids. It was used as the means of procuring offers, and could not control them in the exercise of a proper discretion in the choice of those offers. Nor did any person, by a proposal, acquire any right under or in consequence of the advertisement, until his proposition was accepted.

In ordinary sales of property by auction, neither seller nor buyer is bound until the bid is accepted : 3 *Term. Rep.* 148. And surely, a rule equally liberal is applicable to receivers, in a transaction like this.

If the petitioner acquired no right under the advertisement and his proposal, he cannot complain, even if in fact he is quite as competent to manage the canal as the proposed lessees. The preference shown to others may disappoint his hopes and wound his feelings, but cannot affect any legal right.

The only question remaining is, whether the receivers have acted discreetly in accepting the proposals of Messrs. Mills and Sykes, and in making the agreement with them, mentioned in the lease now submitted.

It appears that the bridges, aqueducts, locks and inclined planes of the canal are in a condition that require a great deal of attention and repair.

That the principal business of the canal is the transportation of coal, in which there is great competition ; and experience in the coal business is likely to be quite necessary to the profitable employment of the canal. Of the proposed lessees, one is a dealer in coals, the other a professed civil engineer ; both bear the character of worthy and competent men, and are said to be fully responsible for the performance of the covenants of the lease; and they offer as much rent as any other person.

It would seem then, that in selecting these persons, the receivers have not acted without due discretion, nor without proper regard to the interests of the trust fund.

[Knott v. The Receivers of the Morris Canal, &c.]

It is unnecessary to institute any comparison of the respective qualifications of the petitioner and the proposed lessees. It is enough that the receivers, who are acquainted with or have the means of knowing the character and capacity of all, have in the exercise of their discretion selected the latter, and as their choice does not appear to be improper, it must be confirmed.

The prayer of the petitioner, therefore, cannot be granted. The lease will be referred to a master, to inquire into its terms, and the sufficiency of the security offered, and report the same with all convenient speed.

Order accordingly.